UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2016 DEC -7 PM 12: 02

BY_____
DEPUTY CLERK

| | |
|---|---|
| KIM BERTOLINI-MIER and ROGER MIER, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| UPPER VALLEY NEUROLOGY NEUROSURGERY, P.C., DONALD W. AYRES, M.D., and ALICE PECK DAY MEMORIAL HOSPITAL, | ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 5:16-cv-35

**OPINION AND ORDER**
(Doc. 19)

In this diversity action, Plaintiffs Kim Bertolini-Mier and her husband Roger Mier sue

Upper Valley Neurology Neurosurgery, P.C. ("UVNN"), UVNN physician Dr. Donald W.

Ayres, and the Alice Peck Day Memorial Hospital ("APD") for medical malpractice and loss of

consortium, alleging that, between 2007 and 2011, APD improperly administered and interpreted

radiologic studies as indicating that Ms. Bertolini-Mier suffered from multiple sclerosis (MS).

(*See* Doc. 8.) Plaintiffs further allege that Dr. Ayres mistakenly relied on APD's findings,

misdiagnosed her with MS, and improperly treated her with an MS drug that caused her harm,

including a neurological event in 2014 that required extended hospitalization. (*See id.*) APD has

filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2), asserting that it is not subject to

personal jurisdiction in Vermont. (Doc. 19.) The court heard argument on the motion on

August 30, 2016. The parties filed supplemental memoranda and the motion was taken under

advisement on October 11, 2016.

**Background**

The following facts relate to APD's contacts with Vermont and its involvement in Ms. Bertolini-Mier's treatment. APD's principal place of business is in Lebanon, New Hampshire; it is a non-profit corporation incorporated in New Hampshire and registered in Vermont to do business as a foreign corporation. (*See* Doc. 8 ¶ 7; Doc. 19-1 ¶ 2; Doc. 21-1 ¶ 8, Doc. 21-7.) The "Principal Office Business Address" listed on APD's Vermont foreign non-profit registration is the Fairlee, Vermont home address of APD's Vice President of Human Resources. (*See* Doc. 21-7 at 1; Doc. 25-3 ¶ 2.) APD's corporate secretary also lives in Vermont, and her Vermont mailing address is identified on APD's Vermont foreign non-profit registration. (*See* Doc. 21-7 at 1; Doc. 25-3 ¶ 3.) APD owns several tradenames that are registered in Vermont. (*See* Doc. 21-1 ¶ 8; Doc. 21-7.) As of June 2016, APD had filed six collection lawsuits in Vermont Superior Court. (*See* Doc. 21-1 ¶¶ 6–7; Doc. 21-5.)

Approximately one third of APD's 93 physicians and other medical providers are licensed in Vermont. (Doc. 21-1 ¶¶ 4–5; Doc. 21-3; Doc. 21-4.)[1] Since March 1, 2016, APD has been affiliated with the Dartmouth-Hitchcock Medical Center ("DHMC"). (*See* Doc. 8 ¶ 7; Doc. 19-1 ¶ 3.) APD owns ten separate clinics, one of which began operating on leased property in Vermont in January 2011. (Doc. 19-1 ¶ 6.) The Vermont clinic relocated to New Hampshire as of June 10, 2016, and all ten of APD's clinics are now in New Hampshire. (*See id.* ¶¶ 5–6.) While it was in operation, APD's Vermont clinic had four to five employees, representing approximately 1% of APD's total workforce. (*Id.* ¶ 7.) Between 2011 and 2015, the Vermont clinic generated more than $3 million in revenues, representing about 1% of APD's total revenue for that period. (*Id.* ¶ 8.)

---

[1] APD asserts that most of its medical providers are not actually APD employees. (*See* Doc. 25 at 7.)

As of March 2016, APD's primary service area included at least 20 Vermont towns. (Doc. 8 ¶ 7.)[2] APD continues to provide services to Vermonters, advertises in Vermont, and consults with the Vermont Department of Health. (*Id.*) APD receives payment for patient care from Medicaid of Vermont, and is registered as a provider in Vermont with Blue Cross Blue Shield of Vermont ("BCBS"). (*Id.*) Citing a one-page printout of a BCBS report dated January 26, 2016, Plaintiffs assert that BCBS does not code APD as an "out of state provider." (*See* Doc. 21 at 2; Doc. 21-9.)

Ms. Bertolini-Mier first met with Dr. Ayres on August 16, 2007, after being referred to him by her Lyndonville, Vermont-based neurologist and primary care provider, Dr. Thomas F. Broderick. (*See* Doc. 25-2 ¶ 2.) Dr. Ayres treated Ms. Bertolini-Mier between August 16, 2007 and April 22, 2014. (*Id.*) During that time, Dr. Ayres and other UVNN providers ordered MRIs of Ms. Bertolini-Mier. (*Id.* ¶ 3.) UVNN ordered some of those studies to be performed at APD's facility in Lebanon, New Hampshire, and others to be performed at DHMC's Lebanon, New Hampshire facility. (*Id.* ¶ 4.) The MRIs performed at APD were interpreted by radiologists affiliated with an independent entity that provides radiology services to APD. (*Id.* ¶ 5; *see also* Doc. 25-3 ¶ 4.) APD sent radiology reports to Dr. Broderick in Lyndonville, Vermont. (*See* Doc. 21-8.) BCBS processed payments to APD for services that APD provided to Ms. Bertolini-Mier. (*See* Doc. 21-1 ¶ 10; Docs. 21-9, 21-10.)

## Analysis

### I.      Rule 12(b)(2) Standard

Without personal jurisdiction over a defendant, the court lacks the power to enter a valid order affecting the rights of that defendant. *See Frontera Res. Azerbaijan Corp. v. State Oil Co.*

---

[2] It is unclear whether the closure of APD's Vermont clinic in June 2016 affected APD's service area. The court presumes that APD's service area still includes multiple Vermont towns.

*of Azerbaijan Republic*, 582 F.3d 393, 397 (2d Cir. 2009) ("The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) [hereinafter "*Bauxites*"])). Under Fed. R. Civ. P. 12(b)(2), a party may move for dismissal for lack of personal jurisdiction.

The court may determine a Rule 12(b)(2) motion on the basis of pleadings and affidavits alone, or it may permit discovery, or it may conduct an evidentiary hearing. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (per curiam). Where a court determines the motion on the basis of pleadings and affidavits, the plaintiff's burden is to "'make a prima facie showing that jurisdiction exists.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). The pleadings and affidavits must be construed in the light most favorable to Plaintiffs, with all doubts resolved in Plaintiffs' favor. *Id.* at 85. However, the court need not draw "argumentative inferences" in Plaintiffs' favor, nor should the court "'accept as true a legal conclusion couched as a factual allegation.'" *In re Terrorist Attacks*, 714 F.3d at 673 (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

Generally, "in resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). "First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process." *Id.* However, Vermont's long-arm statute, 12 V.S.A. § 913(b), reflects a "clear policy to assert jurisdiction over individual defendants to the full extent

4

permitted by the Due Process Clause." *Id.* (quoting *Bechard v. Constanzo*, 810 F. Supp. 579, 582–83 (D. Vt. 1992)). Thus the two inquiries in this case merge into one: "whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Id.*

Consistent with the requirements of due process, the court "may exercise two types of personal jurisdiction over a corporate defendant properly served with process." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "These are specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction." *Id.* "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id.* "General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Id.* If the minimum-contacts inquiry is satisfied, it is also necessary to perform a "reasonableness" inquiry. *See id.* ("Whether specific or general, however, the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process, which requires that any jurisdictional exercise be consistent with 'traditional notions of fair play and substantial justice.'" (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

## II.    Whether APD has Consented to Personal Jurisdiction

"Unlike subject matter jurisdiction, 'the requirement of personal jurisdiction represents first of all an individual right, [and therefore] it can, like other such rights, be waived.'" *Lockheed Martin*, 814 F.3d at 625 (alteration in original) (quoting *Bauxites*, 456 U.S. at 703). "Also, unlike subject matter jurisdiction, a party may simply consent to a court's exercise of personal jurisdiction: for example, an entity may contract or stipulate with another to permit proceedings in a state's courts, notwithstanding the remoteness of the state of its operations and

organization." *Id.* Thus, "[a] variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." *Bauxites*, 456 U.S. at 703. More specifically, for example, the Supreme Court "has upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures." *Id.* at 704 (citing *Adam v. Saenger*, 303 U.S. 59, 67–68 (1938)).

Here, as noted above, APD had filed six lawsuits in Vermont Superior Court as of June 2016. Plaintiffs do not assert that the six prior Vermont lawsuits are related to their claim in this federal case. However, Plaintiffs contend that, by voluntarily and repeatedly using Vermont's courts for its own benefit, APD has consented to personal jurisdiction in Vermont. (Doc. 21 at 5.)

The court rejects Plaintiffs' contention. As the Second Circuit has explained, "[a] party's consent to jurisdiction in one case . . . extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991); *see also Funai Elec. Co. v. Personalized Media Commc'ns, LLC*, Civ. No. 15-558-RGA, 2016 WL 370708, at *3 (D. Del. Jan. 29, 2016) (defendant that had filed two earlier patent-infringement suits in Delaware against unrelated defendants had not impliedly consented to jurisdiction in Delaware). Here, there is no indication that any of the six prior Vermont lawsuits are the same "case" as this one, or that they are even related to this case.

The authorities that Plaintiffs cite are unpersuasive on this point. It is true that in *Saenger*, the Supreme Court stated that a plaintiff, "by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court," and the court could

6

therefore enter a judgment against the plaintiff on a cross-claim brought against the plaintiff. *Saenger*, 303 U.S. at 67. Nothing in *Saenger* suggests that the rule extends to subject such a litigant to jurisdiction in separate, unrelated cases.

Plaintiffs' other cases are similarly distinguishable. They suggest that a defendant's prior litigation as a plaintiff in other cases might amount to consent to jurisdiction in the case against the defendant when the prior cases arise out of the same nucleus of operative facts. *See Gen. Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20, 23 (1st Cir. 1991) ("Trastco elected to avail itself of the benefits of the New Hampshire courts *as a plaintiff*, starting a suit against Interpole. By so doing, we think it is inevitable that Trastco surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of the same transaction or arising out of the same nucleus of operative facts." (footnote omitted)); *Marron v. Whitney Grp.*, 662 F. Supp. 2d 198, 200 (D. Mass. 2009) ("A defendant who purposely avails himself of a particular forum state's courts by initiating a lawsuit there impliedly submits to that forum's jurisdiction with regard to all actions arising from the same nucleus of operative facts, or sharing the same transactional core."). There is no suggestion that the six prior Vermont cases arise from the same nucleus of operative facts as this case.

As noted above, APD is registered to do business in Vermont as a foreign corporation. Plaintiffs do not contend that APD's compliance with Vermont's business registration statutes amounts to consent to personal jurisdiction in Vermont, or otherwise automatically confers jurisdiction. (*See* Doc. 21 at 5 n.2.) The court agrees that mere registration to do business in Vermont is not determinative of the jurisdictional questions in this case. *See Lockheed Martin*, 814 F.3d at 637 (history of business registration statutes suggests that they require assent only to specific jurisdiction, if there is a basis for the exercise of specific jurisdiction); *Viko v. World*

*Vision, Inc.*, No. 2:08-CV-221, 2009 WL 2230919, at *7 (D. Vt. July 24, 2009) ("[C]ompliance with Vermont's foreign corporation registration statute does not entail consent to general personal jurisdiction, at least independently of the minimum contacts required by due process."). For all of the above reasons, the court finds no basis to conclude that APD consented to personal jurisdiction in this case.

### III.   General Jurisdiction—Is APD "Essentially at Home" in Vermont?

The Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), changed the law of general jurisdiction, making it substantially more difficult to establish that type of personal jurisdiction. *See Lockheed Martin*, 814 F.3d at 627 (reading *Daimler* as implementing a "restrictive" test); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135–36 (2d Cir. 2014) (articulating change in the law effected by *Daimler*); *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 274 (E.D.N.Y. 2016) (noting that *Daimler* "narrowed the law on general jurisdiction"); *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, No. 13 Civ. 981(PGG), 2015 WL 1514539, at *7 (S.D.N.Y. Mar. 31, 2015) ("*Daimler* effected a change in the law . . . ."). The court must approach the general jurisdiction question in this case under *Daimler*'s more restrictive test.

A foreign corporation is subject to general jurisdiction in a state where "that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum state.'" *Daimler*, 134 S. Ct. 746 at 761 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).[3]

---

[3] Plaintiffs contend that *Daimler* is distinguishable because it involves corporations that conducted business internationally and throughout the United States, whereas APD conducts business in only two states. (Doc. 21 at 10.) However, Plaintiffs point to no authority suggesting that a different standard applies for foreign corporations with contacts in only a few (or even one) other state.

Case 5:16-cv-00035-gwc   Document 31   Filed 12/07/16   Page 9 of 14

"[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Lockheed Martin*, 814 F.3d at 627. Here, APD is incorporated in New Hampshire and maintains its principal place of business there. Plaintiffs therefore have the "heavy burden" of showing that APD's presence in Vermont constitutes an "exceptional" case rendering APD "at home" and subject to suit for all purposes in Vermont. *Id.*

The Supreme Court in *Daimler* cited only *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as an example of an "exceptional" case. *Daimler*, 134 S. Ct. at 761 n.19. "In *Perkins*, the defendant company's principal place of business was—temporarily, because of wartime circumstances—in Ohio, where it was sued." *Lockheed Martin*, 814 F.3d at 629. For the reasons discussed below, this case is much more like *Lockheed Martin*. In that case, Lockheed Martin had a continuous 30-year presence in Connecticut, leased locations in that state, employed up to 70 workers there, and made about $160 million in revenue from its Connecticut-based work during the five years relevant to the lawsuit. *See id.* at 628. Applying *Daimler*, the Second Circuit concluded that Lockheed Martin—which was incorporated in Maryland and had its principal place of business there—was not subject to general jurisdiction in Connecticut. *See id.* at 630.

As described above—and similar to Lockheed Martin's contacts with Connecticut— APD's contacts with Vermont are substantial and long-standing. Those contacts include APD's registration to do business in Vermont, advertising in Vermont, ownership of trade names registered in Vermont, a service area that includes multiple Vermont towns, use of medical providers who are licensed in Vermont, use of the Vermont court system, and operation of a clinic in Vermont between 2011 and 2016 that generated several million dollars in revenues.

9

However, nothing about those contacts is particularly "exceptional"; they are precisely the sort of contacts one might ordinarily expect from a hospital or business located near a state border.

Plaintiffs' other allegations regarding APD's contacts with Vermont do not alter the court's conclusion. There is no doubt that APD treats many Vermont residents and receives compensation from insurers and government programs such as BCBS and Vermont Medicaid. But that is not enough to prove that APD is essentially at home in Vermont. The January 26, 2016 one-page printout is insufficient by itself to establish that BCBS considers APD to be an in-state provider, and BCBS's coding practices are in any case minimally useful in evaluating APD's contacts with Vermont. APD's recent affiliation with DHMC is also minimally useful to the present analysis. Even assuming that DHMC is subject to all-purpose personal jurisdiction in Vermont,[4] APD's mere "affiliation" with DHMC is insufficient to impute to APD any general jurisdiction that Vermont might have over DHMC. *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 343 F. Supp. 2d 208, 216–17 (S.D.N.Y. 2004) (absent facts suggesting that one company controls or is controlled by affiliate, court would not conflate them for jurisdictional purposes).

The Fairlee, Vermont "Principal Office Business Address" listed on APD's Vermont foreign non-profit registration is not determinative on the jurisdictional question. APD asserts that the Fairlee address was probably used because, under 11A V.S.A. § 15.07(1), in order to register as a foreign corporation in Vermont, APD was required to have a "registered office" in

---

[4] The Second Circuit in *Braman v. Mary Hitchcock Memorial Hospital*, 631 F.2d 6 (2d Cir. 1980), did not decide whether DHMC was subject to general jurisdiction in Vermont, but it did remand for further proceedings on that issue. *Braman*, of course, issued many years prior to the *Daimler* decision and provides little guidance about current standards for general jurisdiction.

Vermont. (*See* Doc. 25 at 9 n.4.)[5]  The Fairlee address is the residence of APD's Vice President

of Human Resources.  Even if the use of the Fairlee address on Vermont's foreign non-profit

organization form is considered in the light most favorable to Plaintiffs, the court cannot

conclude that the address is also APD's principal office address for jurisdictional purposes.

The court rejects Plaintiffs' suggestion that the general-jurisdiction analysis in

*Metropolitan Life* should control in this case.  It is true that, in that case, the Second Circuit

concluded that, although it was a "close case," the defendant's contacts in Vermont were

sufficient for general jurisdiction purposes. *Metro. Life*, 84 F.3d at 572–73.[6]  However, as the

Second Circuit has stated, *Metropolitan Life* was a pre-*Daimler* case, and it employed a different

general-jurisdiction standard. *See Lockheed Martin*, 814 F.3d at 626 (pre-*Daimler* standard that

prevailed in the past was "more forgiving"); *see id.* at 628 n.8 (*Metropolitan Life* was decided

"pre-*Daimler*, when the 'continuous and systematic' standard governed exercise of general

jurisdiction").  In short, as the Second Circuit has stated regarding the test that now governs,

"mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add

---

[5] Section 15.07 of Title 11A provides:

Each foreign corporation authorized to transact business in this state must
continuously maintain in this state:
(1) a registered office that may be the same as any of its places of business; and
(2) a registered agent, who may be:
> (A) an individual who resides in this state and whose business office is
> identical with the registered office;
> (B) a domestic corporation or domestic not-for-profit corporation whose
> business office is identical with the registered office; or
> (C) a foreign corporation or foreign not-for-profit corporation authorized
> to transact business in this state whose business office is identical with the
> registered office.

[6] Analyzing the reasonableness factors applicable to the inquiry as to whether exercising
jurisdiction comported with traditional notions of fair play and substantial justice, the
*Metropolitan Life* court concluded that exercising general jurisdiction would not be fair or
reasonable. *Id.* at 573.

11

up to an 'exceptional case.'" *Id.* at 629.  For the reasons discussed above, APD's contacts with

Vermont do not qualify as exceptional such that APD could be considered "essentially at home"

here.  In the absence of exceptional circumstances, general jurisdiction is available only in New

Hampshire where APD is incorporated and where it maintains its principal place of business.

**IV.    Specific Jurisdiction; Jurisdictional Discovery**

Finally, the court turns to the issue of whether APD has sufficient "case-linked" contacts

with Vermont to support the exercise of specific personal jurisdiction in this case.  "Where the

claim arises out of, or relates to, the defendant's contacts within the forum—i.e., specific

jurisdiction [is asserted]—minimum contacts [necessary to support such jurisdiction] exist where

the defendant purposefully availed itself of the privilege of doing business in the forum and

could foresee being haled into court there." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,

732 F.3d 161, 170 (2d Cir. 2013) (alterations in original) (quoting *Bank Brussels Lambert v.*

*Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)).  This test includes a "nexus"

requirement: the cause of action must "relate to" the defendant's minimum contacts with the

forum.  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 166–67 (2d Cir. 2010).

On the question of specific jurisdiction, the court concludes that jurisdictional discovery

is appropriate.  "When courts authorize discovery to resolve a Rule 12(b)(2) motion, it is

typically in cases where the plaintiff has made less than a *prima facie* showing, but has instead

made a threshold showing that there is some basis for the assertion of jurisdiction or a sufficient

start toward establishing jurisdiction." *Gingras v. Rosette*, No. 5:15-cv-101, 2016 WL 4442792,

at \*2 (D. Vt. Aug. 22, 2016) (internal quotation marks omitted).  Courts do not permit

jurisdictional discovery for the purpose of a "fishing expedition." *Cernansky v. Lefebvre*,

88 F. Supp. 3d 299, 309 (D. Vt. 2015) (quoting *Wego Chem. & Mineral Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 386 (E.D.N.Y. 2013)).

Having carefully reviewing the parties' filings, and in light of the variety of contacts Plaintiffs have described between APD and Vermont, the court elects to exercise its discretion and permit jurisdictional discovery. Plaintiffs suggest that jurisdictional discovery is necessary to determine, among other things, if "services were extended in Vermont" or if "communication and advice were provided in Vermont." (Doc. 21 at 5 n.3.) These issues are relevant to specific jurisdiction.

The court has discretion to limit the scope of jurisdictional discovery, *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016), and in this case, the court concludes that jurisdictional discovery should not extend to issues bearing on general jurisdiction. Plaintiffs have not made a threshold showing for the assertion of general jurisdiction under the more restrictive test announced in *Daimler*. This case is not likely to be transformed into an "exceptional" one through additional discovery on topics such as quantity of work done by APD physicians in Vermont, percentage of revenue from Vermont patients, or relationships with other Vermont agencies or providers. *See Daimler*, 134 S. Ct. at 762 n.20 ("[I]t is hard to see why much in the way of discovery would be needed to determine where a corporation is at home.").

## Conclusion

Alice Peck Day Memorial Hospital's Motion to Dismiss (Doc. 19) is DENIED without prejudice. Plaintiffs are granted 90 days in which to conduct jurisdictional discovery with respect to APD on the question of specific jurisdiction. Plaintiffs may file a supplemental

opposition within 15 days of the completion of jurisdictional discovery and APD may file a reply within 15 days thereafter.

Dated at Rutland, in the District of Vermont, this 7 day of December, 2016.

_____
Geoffrey W. Crawford, Judge
United States District Court

14